```
                  United States District Court
                    District of Massachusetts
```

|                              |   |                      |
|------------------------------|---|----------------------|
| **UNITED STATES OF AMERICA** | ) |                      |
|                              | ) |                      |
|         v.                   | ) |                      |
|                              | ) | Criminal Action No.  |
| John Schurko,                | ) | 22-10051-NMG         |
|                              | ) |                      |
|         Defendant.           | ) |                      |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant John Schurko ("Schurko" or "defendant") has been indicted on two counts of robbery in violation of 18 U.S.C. § 1951. The government also brings a robbery forfeiture allegation under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Currently before the Court is defendant's motion to suppress. For the reasons that follow, the motion will be denied.

**I.   Background**

Schurko's vehicle and personal bag were searched pursuant to a warrant issued in or around December, 2021. The warrant was supported by the affidavit of Somerville Police Officer and member of the inter-departmental Violent Crimes Task Force ("VCTF") John Oliveira ("Oliveira" or "affiant").

The affidavit attests that on December 12, 2021, at around 8:00 p.m., a white male robbed the Harvard Market convenience store located at 229 Highland Avenue in Malden, Massachusetts. A few minutes later, officers arrived at the scene and spoke to a victim, a clerk, who said that he was robbed at gunpoint by a white male who was about 5'10" and wore a black jacket and ski mask.

The next morning, Oliveira spoke once more to the victim who confirmed his prior description and estimated the robber's age to be around 45-55 years old.  Surveillance video of the robbery confirmed the description and enabled officers to glean that the robber wore

> a blue hat, a black 3/4 zip jacket with a white logo on the chest area, black gloves, a black ski mask, blue jeans, and black and white sneakers.

According to the affidavit, Oliveira along with other VCTF officers reviewed surveillance footage from two nearby residences and the Mystic Valley Regional Charter School ("the Charter School") located across the street from Harvard Market. From the footage, investigators identified the vehicle the suspect used as an older, white, large SUV.  The footage also displayed the suspect's vehicle drive by the area several times before the robbery and the suspect himself return to the vehicle following the robbery.

The government avers that, since before the Harvard Market robbery, defendant was a suspect of three other robberies in Woburn, Billerica and Medford, Massachusetts. The government denies, however, that defendant's status as a suspect in the prior robberies was used as a basis for probable cause in the Harvard Market robbery. In addition, at about the time of the Harvard Market robbery, investigators learned that defendant was suspected of robbing a neighbor in a Stoneham, Massachusetts apartment building and that building management required defendant to vacate his residence.

The affidavit asserts that, because investigators were unable to decipher the license plate on the suspect's SUV, they conducted checks of several local hotels to find a vehicle consistent with the SUV seen in the footage. While the affidavit does not state expressly, it is reasonable to assume that investigators searched hotels with the knowledge that Schurko had recently been evicted from the apartment where he had been residing.

On December 14, 2021, investigators found a white 2005 GMC Yukon, Massachusetts registration 3FBH19 in the parking lot of the AC Hotel ("the hotel") in Medford, Massachusetts.[1] Soon thereafter, investigators contacted hotel management, who

---

[1] Defendant characterizes the hotel as a Marriott while the government refers to it as an "AC Hilton Hotel." The Court takes judicial notice that, at present, the hotel is an AC Marriott.

confirmed that Schurko had been staying at the hotel since December 6, 2021.

Members of the Medford Police Department subsequently checked surveillance cameras near the hotel for footage from 7:00 p.m., December 12, 2021, forward. At about 7:35 p.m., the footage purportedly displays a white male wearing a black 3/4 zip pullover, a black neck gaiter pulled down around his neck area, blue jeans, black sneakers and a white baseball cap get into the GMC Yukon. Video also shows that vehicle travel in the direction of Harvard Market.

At around 8:15 p.m. on the surveillance footage, investigators observed the GMC Yukon return to the hotel parking lot and the same individual, identically attired, emerge. Unlike the earlier footage, however, the 3/4 zip jacket was zipped up such that any neck gaiter was not visible, and the man was then wearing black gloves. The affiant opines that the hotel is within a 5-minute drive of the Harvard Market under normal traffic conditions. The footage was further reviewed by FBI Special Agent Kristin Koch who purportedly has met Schurko and "is 95% sure" the man in the footage is Schurko.

On December 15, 2021, investigators were conducting surveillance of the hotel when they saw Schurko approach the GMC Yukon with a grey duffle bag and white trash bag. He was placed under arrest and soon thereafter investigators executed a search

warrant of the Yukon and defendant's personal property. Investigators recovered

> blue jeans consistent with those worn by the robber in Malden, black gloves, a black neck gaiter, and a black Airsoft handgun that appears consistent with the weapon shown during the Malden robbery.

A criminal complaint was filed against defendant shortly thereafter and defendant was indicted in March, 2022.

## II. Motion to Suppress

In support of his motion to suppress defendant asserts that 1) the affidavit contained material misrepresentations necessitating a Franks hearing and 2) in light of the alleged misrepresentations in the affidavit, there was no probable cause to issue the warrant.

### A. Franks Hearing

For a defendant to be entitled to a Franks hearing, he must make a preliminary showing that

> [1] a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [2] the allegedly false statement is necessary to the finding of probable cause...

Franks v. Delaware, 438 U.S. 154, 155-56, (1978).  Defendant must make a sufficient showing as to both elements to justify a hearing. See United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012) ("Failure to make a showing on either element dooms a party's hearing request.").  To demonstrate a false statement

through reckless disregard for the truth, a defendant must provide evidence either that the affiant

> entertained serious doubts as to the truth of the allegations or where circumstances evinced obvious reasons to doubt the veracity of the allegations in the application.

United States v. Gifford, 727 F.3d 92, 98-99 (1st Cir. 2013).

Defendant questions several assertions made in the affidavit. First, he claims that neither Detective Oliveira nor Special Agent Koch had the requisite familiarity with defendant's appearance to identify him as the man getting into the white Yukon SUV in the hotel surveillance footage from December 15.

That contention is belied by the evidence. The parties agree that Special Agent Koch met defendant in person in the days prior to his arrest. Thus, Special Agent Koch had sufficient familiarity with defendant to identify him with 95% certainty. Similarly, Detective Oliveira reasonably inferred that defendant appeared in the December 15 surveillance footage based on detailed descriptions of his attire and appearance from footage and eyewitness accounts of the December 12 robbery.

Schurko also finds fault in the affidavit's failure to describe the quality of the surveillance video. He does not, however, cast any doubt that the video was sufficient to

identify him in conjunction with the ample additional evidence the government has adduced.

Finally, Schurko contends that because the November 12 surveillance video in the vicinity of the robbery does not depict 1) the suspect getting in or out of the white SUV 2) the suspect driving the white SUV in front of Harvard Market or 3) definitive proof that the white SUV is the same vehicle observed in the hotel parking lot, the affiant cannot reliably identify defendant. Defendant's contentions are unavailing.

Investigators made reasonable inferences to link the white SUV to the defendant. The affiant did not aver that the SUV directly passed by Harvard Market but rather that it drove in the vicinity of the store in the minutes preceding the robbery. It is plausible that a prospective robber would avoid directly passing his target while scoping out the environs.

The November 12 video from the Charter School purportedly displayed a white SUV at the intersection of Emerald Street and Highland Avenue, adjacent to Harvard Market. The video is not, itself, dispositive but is certainly substantial evidence linking Schurko to the robbery.

Finally, defendant's suggestion that there is no definitive proof that the white SUV in the hotel parking lot is the same vehicle that was observed near Harvard Market does not jeopardize the affiant's reliability. Although the evidence may

not be conclusive, it contributed to the ultimate finding of probable cause.

Defendant's reliance on the purported omissions does not support his claim that the affidavit was made in "reckless disregard of whether [it] would mislead the magistrate." United States v. Tanguay, 787 F.3d 44, 49 (1st Cir. 2015) (quoting United States v. Colkley, 899 F.2d 297, 300-01 (4th Cir. 1990)). A Franks hearing is, accordingly, unwarranted.

**B. Probable Cause**

A magistrate judge's finding as to probable cause is entitled to "great deference". Illinois v. Gates, 462 U.S. 213, 236 (1983). The decision to issue a search warrant should be reversed only if there is "no substantial basis for concluding that probable cause existed." United States v. Dixon, 787 F.3d 55, 58-59 (1st Cir. 2015) (citation omitted).

Probable cause exists when, based upon common sense and the totality of the circumstances,

> there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Gates, 462 U.S. at 238. A warrant application must demonstrate probable cause to believe that (1) a crime has been committed (the "commission" element) and (2) enumerated evidence of the offense will be found at the place searched (the "nexus"

element). United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999).

Defendant's primary contention is that misrepresentations and omissions in the affidavit nullify the probable cause supporting the search warrant. Because this Court has determined that defendant has not shown any material misrepresentation or omission, he has not rebutted the finding of probable cause.

In conclusion, the Court notes that there was sufficient evidence to support probable cause including, inter alia, 1) matching descriptions of the robber and his attire in surveillance videos and eyewitness accounts of the robbery, 2) matching descriptions of the SUVs from the surveillance videos, 3) statements from hotel management tying defendant to the AC Hotel, and 4) evidence from the Station Landing surveillance video on December 12 at 7:35 p.m. showing a white male with a nearly identical description to the robber get into a large white SUV several minutes prior to the robbery.

Defendant's efforts to isolate individual pieces of evidence and suggest that each in itself is insufficient to establish probable cause runs contrary to the totality of the circumstances inquiry. The motion to suppress will be denied.

**ORDER**

For the foregoing reasons, the motion of defendant, John Schurko, to suppress evidence (Docket No. 78) is **DENIED.**

**So ordered.**

                                                   /s/ Nathaniel M. Gorton
                                                  Nathaniel M. Gorton
                                                  United States District Judge

Dated:  November 27, 2023